# Confirmed Original Note



**Confirmed Note by:  Ebony Jones**

# LOAN AGREEMENT AND DISCLOSURE STATEMENT

**AMERICAN GENERAL FINANCIAL SERVICES**

| DATE 02/09/10 | ACCOUNT NUMBER ██████ | TYPE OF LOAN (ALPHA) I 00 |
|---|---|---|

| LENDER NAME, ADDRESS AND PHONE NUMBER ("Lender") | BORROWER(S) NAME, ADDRESS AND PHONE NUMBER ("I", "We") |
|---|---|
| AMERICAN GENERAL FINANCIAL SERVICES, INC.<br>708 BROOKWAY BLVD<br>BROOKHAVEN, MS 39601-2640<br><br>601-833-2500 | HUGH R WALLACE<br>NANCY K WALLACE<br>1969 MILL CREEK LANE<br>BOGUE CHITTO, MS 39629<br><br>████████ |

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

DATE OF LOAN. 02/09/10   (the date the Finance Charge is scheduled to begin to accrue).

CONTRACT RATE.   8.50 % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth in this Agreement.

PRINCIPAL. Principal is the total of the Amount Financed, plus Prepaid Finance Charges disclosed below, herein.

TOTAL AMOUNT DUE. The amount due each month as shown on my/our monthly billing statement.

LATE CHARGE. I agree to pay any late charge described in the Truth in Lending Disclosures herein.

PROMISE TO PAY. For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure below, including all escrow items as disclosed in the INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT, if any, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS *<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.83 % | $ 52397.96 | $ 64936.84 | $ 117334.80 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 180 | $ 651.86 | monthly beginning 03/16/10 |
|  |  |  |

\* "Amount of Payments" or "TOTAL OF PAYMENTS" above, do not include amounts for escrow or impound items, or monthly insurance premiums, if any.

LATE CHARGE: ☐ If any payment is not paid in full within _____ days after its due date, I will be charged _____% of the _____ amount of the payment, but not more than $ _____ or less than $ _____.

☐ If any payment is not paid in full within _____ days after its due date, I will be charged $ _____ if the entire scheduled payment exceeds $ _____ or $ _____ if the entire scheduled payment is $ _____ or less.

PREPAYMENT:   ☒ I may   ☐ I will not   have to pay a penalty or minimum charge.

☐ I may   ☒ I will not   get a refund or credit of part of the finance charge.

ADJUSTABLE RATE LOAN.   ☐ My loan contains a variable-rate feature, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement. Disclosures about the variable-rate feature have been provided to me earlier, and contract provisions can be found on the following pages.

SECURITY.   I am giving Lender a security interest in Real Estate located at:
1969 MILL CREEK LANE
BOGUE CHITTO, MS 39629

ASSUMPTION:   The purchaser of the Real Estate that secures this loan may not assume the remainder of this agreement on the original terms without the prior express written consent of Lender.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

**YOU ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THESE DISCLOSURES OR SIGNED A LOAN APPLICATION.**

## OTHER DISCLOSURES

ESCROW:   I/We acknowledge that my/our Total Amount Due each month under this Agreement with Lender:

*HRW  NKW*
(Initials)

☒ Does include amounts to be held in escrow for payment of property taxes, premiums for Required Insurance covering the property, or other agreed to amounts, as are described in my/our "INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT." Lender will establish an escrow account wherein the escrow payments will be held until used. Lender will pay interest on the escrow balance at the rate of NONE   % per year. Lender will use the escrow funds to pay my/our property taxes, Required Insurance premiums and other agreed to obligations for me/us, on my/our behalf.

_____   _____
(Initials)

☐ Does Not include amounts to be held in escrow for payment of property taxes, premiums for Required Insurance covering the property, there are no escrow accounts associated with our Agreement. Tax and insurance costs can be substantial. I/We agree to make required payments to the appropriate tax authority or provider of Required Insurance when payments are due.

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

*Hugh R. Wallace*
Borrower

*Nancy K Wallace*
Co-Borrower

## SEE NEXT PAGE FOR IMPORTANT ADDITIONAL TERMS

## ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| | | | |
|---|---|---|---|
| 1. $ NONE | | | PAID TO |
| 2. $ | 600.00 | Title Examination Fee | PAID TO HOMELAND TITLE |
| 3. $ NONE | | | PAID TO |
| 4. $ | 395.00 | Appraisal Fee | PAID TO FIRST TITLE LLC |
| 5. $ NONE | | | PAID TO |
| 6. $ NONE | | | PAID TO |
| 7. $ NONE | | | PAID TO |
| 8. $ NONE | | | PAID TO |
| 9. $ | 189.00 | Title Insurance Fee | PAID TO HOMELAND TITLE |
| 10. $ NONE | | | PAID TO |
| 11. $ NONE | | | PAID TO |
| 12. $ | 28.00 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 13. $ NONE | | | PAID TO |
| 14. $ NONE | | | PAID TO |
| 15. $ NONE | | | PAID TO |
| 16. $ | 2091.00 | | PAID TO HARRISON |
| 17. $ | 1306.00 | | PAID TO REPUBLIC |
| 18. $ | 2961.00 | | PAID TO 1ST HERITAGE |
| 19. $ | 1000.00 | | PAID TO CITI |
| 20. $ | 753.36 | | PAID TO HUGH WALLACE AND NANCY WALLACE |
| 21. $ | | | PAID TO |
| 22. $ | | | PAID TO |
| 23. $ | | | PAID TO |
| 24. $ | | | PAID TO |
| 25. $ | | | PAID TO |
| 26. $ | | | PAID TO |
| 27. $ | | | PAID TO |
| 28. $ | | | PAID TO |
| 29. $ | | | PAID TO |
| 30. $ | | | PAID TO |
| 31. $ | | | PAID TO |
| 32. $ | | | PAID TO |
| 33. $ | | | PAID TO |
| 34. $ | | | PAID TO |
| 35. $ | | | PAID TO |
| 36. $ | | | PAID TO |
| 37. $ | | | PAID TO |
| 38. $ | | | PAID TO |
| 39. $ | | | PAID TO |
| 40. $ | | | PAID TO |

Amount Paid on Prior Account with Lender

41. $    54888.64

Amounts Paid to me

| | | |
|---|---|---|
| 42. $ | | PAID TO |
| 43. $ | | PAID TO |
| 44. $ | | PAID TO |
| 45. $ | | PAID TO |
| 46. $ | | PAID TO |
| 47. $ | | PAID TO |

| | | |
|---|---|---|
| 48. $ | 724.84 | Amounts Deposited with Lender in Escrow (itemized below) |
| $(NONE | ) | Cash to Close Amount |
| $ | 64936.84 | Amount Financed (Sum of lines 1 - 48 less Cash to Close Amount) |
| $ | 1260.00 | Prepaid Finance Charges (itemized below) |

## PREPAID FINANCE CHARGES

| | | | |
|---|---|---|---|
| 1. $ | 1260.00 | Points | PAID TO   LENDER |
| 2. $ NONE | | | PAID TO |
| 3. $ NONE | | | PAID TO |
| 4. $ NONE | | | PAID TO |
| 5. $ NONE | | | PAID TO |
| 6. $ NONE | | | PAID TO |
| 7. $ NONE | | | PAID TO |
| 8. $ NONE | | | PAID TO |
| 9. $ NONE | | | PAID TO |
| 10. $ NONE | | | PAID TO |
| 11. $ NONE | | | PAID TO |
| 12. $ NONE | | | PAID TO |

## AMOUNTS DEPOSITED WITH LENDER IN ESCROW

| | | |
|---|---|---|
| 1. $ | 797.50 | FOR HOMEOWNER'S INSURANCE |
| 2. $ | 107.49 | FOR PROPERTY TAX |
| 3. $ NONE | | FOR FLOOD INSURANCE |
| 4. $( | 180.15) | FOR AGGREGATE ADJUSTMENT |
| 5. $( | 0.00) | FOR PRIOR ACCOUNT ESCROW BALANCE ROLLOVER |

### SEE NEXT PAGE FOR IMPORTANT INFORMATION

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement, any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement, any allegation of fraud or misrepresentation, any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender, and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

## ARBITRATION RULES AND PROCEDURES.

**A.   ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B.   SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.   STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute, and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D.   COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.   CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

### SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS

**ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)**

**F.    ENFORCEMENT AND APPEAL OF DECISION.**  The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided.  The decision of the panel shall be by majority vote and shall be final and binding, except as provided below.  The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G.    LIMITATION OF PROCEEDINGS.**  Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements).  Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons.  I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H.    LIMITATION OF ARBITRATOR'S AUTHORITY:**  The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages.  In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted.  The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I.    LOCATION OF THE ARBITRATION.**  The arbitration will take place in the county where I live unless Lender and I agree to another location.  If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J.    ENFORCEMENT IN COURT.**  Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K.    FORUM SELECTION CLAUSE.**  If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location.  Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.**  I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405.  (800-474-2371 (Telephone)).  (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.**  Lender and I agree:

(a)   This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b)   The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c)   The Federal Arbitration Act applies to and governs this Agreement.  State arbitration laws and procedures shall not apply to this Agreement.

(d)   This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e)   If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f )   This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g)   This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

**I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION.  BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

**DATE OF LOAN.** 02/16/10 (the date the Finance Charge is scheduled to begin to accrue).

**CONTRACT RATE.** 8.50 % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, including all Escrow Items as disclosed in the INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT, if any, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index plus a margin. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index. The Contract Rate and the monthly payment amounts may change as set forth herein.

Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.

My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____%, and will never be less than _____%.

The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (a) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and subject to any modifications, renewals, extensions, and future advances thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement where appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**ESCROW PAYMENTS.** I shall pay to Lender on or before the Payment Due Date, in addition to the Minimum Payments shown on each of my Monthly Statements, if any, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; and (b) leasehold payments or ground rents on the Property, if any, and (c) premiums for any and all Required Insurance addressed below. These items are called "Escrow Items" ("Escrow Items"). I agree to pay Funds for Escrow Items each and every month, until all sums that I owe Lender under this Agreement, or the Security Instrument are paid in full, my Account is terminated, and Lender releases or discharges the Security Instrument.

At origination or at any time during the term of the Agreement, Lender in its sole discretion, may require that any expense associated with owning the Property be escrowed by me, such expenses may include, but are not limited to, Community Association Dues, Fees, or Assessments, if any, and such dues, fees or assessments shall be each its own Escrow Item. I shall promptly furnish to Lender all notices of amounts to be paid under this Section.

Lender, in its sole discretion, may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be deemed for all purposes to be a covenant to Lender, as the term "covenant" is used in the Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to Lender's waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Security Instrument and pay such amount and I shall then be obligated under the Security Instrument to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by giving me a notice and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender will not pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments. My failure to repay any shortages or deficiencies in accord with this paragraph will constitute a breach of this Agreement.

Upon (a) payment in full of all sums that I owe Lender under this Agreement or which are secured by the Security Instrument, (b) Termination of my Account, and (c) Release or discharge of my Security Instrument by Lender, Lender shall promptly refund to me any Funds held by Lender.

**REQUIRED INSURANCE.** I am required to maintain insurance in types, amounts, terms and deductible levels acceptable to Lender ("Required Insurance"). I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy to be obtained and paid for by me. I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender. Lender may for reasonable cause decline any insurance provided by me. The types, amounts, and deductible levels that Lender requires under this Agreement may change during the term of the Agreement. Required Insurance must: (a) include a standard mortgage clause; (b) name Lender as loss payee or mortgagee; (c) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (d) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee or mortgagee; and (e) not include any disclaimer of the insurer's liability for failure to give such notice. I shall promptly give to Lender satisfactory proof (in Lender's reasonable estimation) of all Required Insurance and all receipts of paid premiums and renewal notices.

**SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**

I agree to provide Lender with satisfactory proof of my Required Insurance. I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement or the Security Instrument are paid in full, my Account is terminated, and Lender releases or discharges the Security Instrument. In case of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf.

If, at any time, I fail to buy or keep in force Required Insurance, Lender may, but is not required to, obtain insurance coverage, in Lender's sole discretion, and at my expense, to protect Lender's interest in the Property. I understand and agree:

- Lender is under no obligation to obtain any particular type or amount of coverage.
- Lender obtained insurance may, but need not, protect my interests.
- Lender obtained insurance may, but need not, pay any claim I make.
- The cost of insurance obtained by Lender may be much more than the cost of insurance I could have obtained on my own.
- If an escrow account has been established by Lender to pay Escrow Items, Lender obtained insurance premiums may be paid with Escrow Funds, to the extent permitted or required by law. Using Funds to pay these premiums may increase the amount of Funds due to Lender each month.
- If an escrow account is not associated with this Account at the time Lender obtains insurance, any amounts disbursed by Lender under this Section, to obtain lender-placed insurance, shall become additional debt of mine under this Agreement, secured by the Security Instrument.
  - o  This additional debt will bear interest at the Note rate from the date of placement and will be payable, with such interest, upon notice from Lender to me requesting payment.
  - o  I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance.
- That Lender, or its affiliate, may earn a profit by obtaining this insurance, to the extent permitted by applicable law.
- That Lender may, at its sole option, cancel this insurance and that Lender has a security interest in any unearned premiums from such insurance.
  - o  I hereby assign to Lender any rights I may have to unearned Lender obtained insurance premiums.
  - o  I authorize and appoint Lender to be my attorney-in-fact for the purpose of cancelling the Lender obtained insurance and apply the unearned premiums to reduce the Account balance upon cancellation of said insurance.

I authorize Lender to obtain the insurance required by this Agreement.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** Where allowed by law, I hereby absolutely assign to Lender my rights to any property insurance proceeds, and any unearned premium refunds, and any other rights under policies covering my property up to, but not in excess of the Total Balance due under this Agreement or Security Instrument. I agree that Lender may use any insurance proceeds to reduce the amounts that I owe under this Agreement and the Security Instrument, whether or not they are due. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement and the Security Instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the Security Instrument.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:

A.  I fail to make any payment, including, but not limited to the Total Amount Due, under this Agreement when due.
B.  I fail to do anything else I have agreed to do in this Agreement.
C.  Any statement or representation I made in my credit application is untrue or incorrect.
D.  I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.
E.  I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
F.  Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
G.  Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.
H.  If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.
I.  I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.
J.  Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

**(For Kansas residents only,** Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default of this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A.  Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
B.  Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.
C.  If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.
D.  If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.
E.  Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.
F.  If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.
G.  Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.
H.  Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

**SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**

Initials _HRL_  _NKW_

Agreement (5-6b)

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.**  Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law

**NOTICES.**  If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance

**DELAY IN ENFORCEMENT.**  Lender may delay enforcing any of its rights under this Agreement without losing them

**SAVINGS CLAUSE.**  All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law  If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then  (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded.  Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me  To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

**NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

I/We acknowledge that my/our Total Amount Due each month under my/our Agreement with Lender does      include payments for property taxes (or special assessments), or premiums for insurance covering the property.  Property Tax and Insurance costs can be substantial.

If there are no escrow or impound accounts under my/our Agreement, I/We agree to make required payment(s) to the appropriate tax authority and/or insurance provider as they are due.

---

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

**THIS PAGE**

**INTENTIONALLY**

**LEFT BLANK**

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

[X] **INTEREST BEARING LOAN.** If checked, I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, including all Escrow Items as disclosed in the INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT, if any, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and the monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due loan payment(s); (c) any escrow amounts due, and (d) currently due loan payments. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) any escrow amounts due; (e) currently due credit insurance premiums that are billed on a monthly basis, and (f) currently due loan payments. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest, with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by the Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full, to the extent permitted by applicable law.

[ ] **PRECOMPUTED LOAN.** If checked, I agree to pay to the order of Lender the Total of Payments in the amounts and on the dates shown in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay finance charges on these unpaid amounts, computed at the Contract Rate, until paid in full. All payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due loan payment(s); and (c) currently due loan payments. When applying payments to past and currently due loan payments, monies will be applied to the Total of Payments.

**PRINCIPAL.** Principal (also called "State Amount Financed") is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed. Total Principal is $ __66196.84__

**INTEREST.** The amount of interest in accordance with scheduled payments is $ __51137.96__ ("State Finance Charge").

[ ] **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender on or before the due date of my Balloon Payment.

**PREPAYMENT REFUND.** I may prepay all or any part of my loan at any time, subject to the payment of the penalty (if any) described below. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

If my loan is a Precomputed Loan and I prepay in full, the amount I owe will be reduced by any unearned finance charges, computed by: (a) if the term of this Agreement is sixty-one (61) months or less and this loan is not governed by § 226.32 of Regulation Z, which implements the Home Ownership and Equity Protection Act, the Rule of 78s method, as provided by § 75-67-127, Mississippi Code of 1972; or (b) if the term of this Agreement is more than sixty-one (61) months or is governed by § 226.32, the actuarial method. No refund of less than $1.00 will be made.

**LATE CHARGE.** I agree to pay any late charge described in the Truth in Lending Disclosures herein.

**DEFERMENT CHARGE.** If my loan is a Precomputed Loan, Lender and I may agree to defer the due dates of one or more remaining scheduled payments, and I agree to pay a deferment charge as permitted by § 75-67-120, Mississippi Code of 1972. I will not have to pay a late charge on any deferred payment

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $ __15.00__

**PREPAYMENT PENALTY.**

[ ] If checked, there will be no prepayment penalty.

[X] If checked, and I prepay the loan in full at any time less than __24__ months from the Date of Agreement, I agree to pay a prepayment penalty of:

   (a)   5% of the unpaid Principal if prepayment in full occurs prior to twelve (12) months from the Date of Agreement;

   (b)   4% of the unpaid Principal if prepayment in full occurs on or after twelve (12) months from the Date of Agreement, but prior to twenty-four (24) months from the Date of Agreement; or

   (c)   3% of the unpaid Principal if prepayment in full occurs on or after twenty-four (24) months from the Date of Agreement, but prior to thirty-six (36) months from the Date of Agreement; or

   (d)   2% of the unpaid Principal if prepayment in full occurs on or after thirty-six (36) months from the Date of Agreement, but prior to forty-eight (48) months from the Date of Agreement; or

   (e)   1% of the unpaid Principal if prepayment in full occurs on or after forty-eight (48) months from the Date of Agreement but prior to sixty (60) months from the Date of Agreement

There will be no prepayment penalty if:

   (a)   this loan is refinanced or consolidated by Lender or its affiliate;

   (b)   this loan is prepaid with insurance proceeds;

   (c)   this loan is prepaid as a result of lawsuit, foreclosure, or acceleration;

   (d)   Lender disapproves a request for assumption and exercises its rights under a due on sale clause, and imposition of the prepayment penalty is prohibited by applicable law, or

   (e)   this loan is prepaid more than __24__ months from the Date of Agreement.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's: (a) court costs; (b) reasonable attorney's fees; and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** The laws of the State of Mississippi shall govern this Agreement, except as preempted by federal law.

## PLEASE SEE IMPORTANT INFORMATION ON REVERSE

ENTIRE AGREEMENT. This Agreement, which includes the Insurance Disclosure Summary, if one was provided to me, contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

IF I DEFAULT AND THIS LOAN IS SECURED BY A DEED OF TRUST ON MY HOME, I MAY LOSE MY HOME.

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.                                                                    UNARBT (8-12-01)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

x _Robbie Winbill_____   x _Hugh R. Wallace_____ L.S.
Witness                                Borrower    HUGH R WALLACE

x _Rhonda E Smith_____   x _Nancy K Wallace_____ L.S.
Witness                                Co-Borrower NANCY K WALLACE

                                      x _____ L.S.
                                         Co-Maker
                                         Print Name: _____

                                      x _____ L.S.
                                         Co-Maker
                                         Print Name: _____

## NOTE ALLONGE

THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART OF THE NOTE TO WHICH IT IS ATTACHED.

Borrower 1:  WALLACE, HUGH

Borrower 2:  WALLACE, NANCY K

Date of Loan:  2/9/2010

Loan Amount:  $ 66,196.84

Property Address:  1969 MILL CREEK LN SW

City, State, Zip:  BOGUE CHITTO, MS  39629

Account #

*Pay to the order of:*

Without recourse

SPRINGLEAF FINANCIAL SERVICES, INC., FKA AMERICAN GENERAL FINANCIAL SERVICES, INC.

Monte Conrad
Assistant Vice President

20155307

BK 1496 PG 0257

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Prepared By:**
**E.Lance/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**
**Loan No** ▮▮▮▮▮▮▮
**Springleaf Loan No** ▮▮▮▮▮▮▮

## ASSIGNMENT OF
## MORTGAGE / DEED OF TRUST

Regarding this instrument, contact Nationstar Mortgage, LLC, 4000 Horizon Way, Irving, TX 75063, telephone # 972-956-6320, which is responsible for receiving payments.

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC., WHOSE ADDRESS IS 601 N.W. SECOND St., EVANSVILLE, IN, 47708,** (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage/Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2012-2, WHOSE ADDRESS IS C/O 4000 HORIZON WAY, IRVING, TX 75063, ITS SUCCESSORS AND ASSIGNS,** (ASSIGNEE).

Said Mortgage/Deed of Trust is dated 02/09/2010, executed by **HUGH RONNIE WALLACE AND NANCY K. WALLACE** to **AMERICAN GENERAL FINANCIAL SERVICES, INC.** and recorded on 02/25/2010 in **Book 1346, Page 0965, and/or Doc# 20100911** of the Records of Deeds in the office of the Chancery Clerk of **LINCOLN** County, **Mississippi.** .

SEE EXHIBIT A ATTACHED

Property is commonly known as: 1969 MILL CREEK LANE, BOGUE CHITTO, MS 39629.

Dated on _____ 9/ 15 /2015 (MM/DD/YYYY)
**SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC.**

(Seal)

By: _____
   **Kristina Emmanouil**
   **VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

CORPORATE
SEAL

BORR:   WALLACE        LOAN #:
Document: Assignment ()

FUND DATE:
10/01/14

BK 1496 PG 0258

Loan No ██████████████
Springleaf Loan No ██████████████

STATE OF FLORIDA     COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___9_/_15_/2015 (MM/DD/YYYY), by Kristina Emmanouil as VICE PRESIDENT of SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Danielle Kennedy
Notary Public - State of FLORIDA
Commission expires 06/26/2017

Danielle Kennedy
Notary Public State of Florida
My Commission # FF031287
Expires June 26, 2017

'EXHIBIT A'   BK 1496 PG 0259

TRACT I COMMENCE AT THE NW CORNER OF THE SW 1/4 OF THE NW 1/4 OF SECTION 32 TOWNSHIP 6 NORTH RANGE 7 EAST LINCOLN COUNTY MISSISSIPPI AND RUN S00 DEGREES 13'40'' W 778.60' TO THE POINT OF BEGINNING FROM THE POINT OF BEGINNING RUN THENCE S 00 DEGREES 13'40'' W 541.40' THENCE RUN N 89 DEGREES 59'35'' E 193.60' THENCE RUN N 00 DEGREES 00'25'' W 542.01 THENCE RUN S 89 DEGREES 54'00'' W 190.49 TO THE POINT OF BEGINNING. SAID PROPERTY SITUATED IN PART OF THE SW 1/4 OF THE NW 1/4 AND THE NW 1/4 OF THE SW 1/4 OF SECTION 32 TOWNSHIP 6 NORTH RANGE 7 EAST LINCOLN COUNTY MISSISSIPPI AND CONTAINS 2.39 ACRES TRACT II COMMENCE AT THE NW CORNER OF THE SW 1/4 OF THE NW 1/4 OF SECTION 32 TOWNSHIP 6 NORTH RANGE 7 EAST LINCOLN COUNTY MISSISSIPPI AND RUN S 00 DEGREES 13'40'' W 1314.00' TO THE POINT OF BEGINNING FROM THE POINT OF BEGINNING RUN THENCE S 00 DEGREES 13'40'' W 30.00' THENCE RUN S 89 DEGREES 47'51'' E 193.60' THENCE RUN N 00 DEGREES 00'25'' W 30.00' THENCE RUN N 89 DEGREES 47'51'' W 193.43' TO THE POINT OF BEGINNING SAID PROPERTY SITUATED IN PART OF THE SW 1/4 OF THE NW 1/4 AND THE NW 1/4 OF THE SW 1/4 OF SECTION 32 TOWNSHIP 6 NORTH RANGE 7 EAST LINCOLN COUNTY MISSISSIPPI AND CONTAINS 0.133 ACRES SUBJECT TO A PERMANENT AND PERPETUAL EASEMENT RESERVED BY PEGGY SUE MOAK TO WIT COMMENCE AT THE NW CORNER OF THE SW 1/4 OF THE NW 1/4 OF SECTION 32 TOWNSHIP 6 NORTH RANGE 7 EAST LINCOLN COUNTY MISSISSIPPI AND RUN S 00 DEGREES 13'40'' W 1297.60' TO THE POINT OF BEGINNING FROM THE POINT OF BEGINNING RUN THENCE S 00 DEGREES 13'40'' W 30.00' THENCE RUN S 89 DEGREES 47'51'' E 193.60' THENCE RUN N 00 DEGREES 00'25'' W 30.00' THENCE RUN N 89 DEGREES 47'51'' W 193.43' TO THE POINT OF BEGINNING. SAID PROPERTY SITUATED IN PART OF THE SW 1/4 OF THE NW 1/4 OF SECTION 32 TOWNSHIP 6 NORTH RANGE 7 EAST LINCOLN COUNTY MISSISSIPPI AND CONTAINS 0.133 ACRES.





BK I 5 4 I PG 0 3 1 2

2 0 1 7 2 4 8 6

| Prepared by:<br>Nationstar Mortgage LLC<br>8950 Cypress Waters Blvd<br>Coppell, Texas 75019<br>1-888-480-2432 - N/A | Return to:<br>Shapiro & Massey, LLC<br>1080 River Oaks Drive, Suite B-202<br>Flowood, MS 39232<br>(601) 981-9299 |
|---|---|
| S&M No.  16-016651 | Loan No. XXXXXX6222 |
| Grantor<br>U.S. Bank National Association, as Indenture<br>Trustee for CIM Trust 2015-3AG Mortgage-<br>Backed Notes, Series 2015-3AG<br>C/o Nationstar Mortgage LLC<br>8950 Cypress Waters Blvd<br>Coppell, Texas 75019<br>1-888-480-2432 - N/A | Grantee<br>Nationstar Mortgage LLC<br>8950 Cypress Waters Blvd<br>Coppell, Texas 75019<br>1-888-480-2432 - N/A |

INDEX:  Part of the SW 1/4 of the NW 1/4 and the NW 1/4 of the SW 1/4 of Section 32, Township 6 North, Range 7 East, Lincoln Co., MS

### ASSIGNMENT COVER SHEET

1969 Mill Creek Lane, Bogue Chitto, MS 39629

BK 1541 PG0312

Recording Requested By: Nationstar Mortgage

*Prepared By:* Bernardo Hernandez, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432
When Recorded Return To: DOCUMENT ADMINISTRATION, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019   1-888-480-2432

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Lincoln, Mississippi
**SELLER'S SERVICING**            "WALLACE"

Date of Assignment: May 3rd, 2017
Assignor: U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR CIM TRUST 2015-3AG MORTGAGE-BACKED NOTES, SERIES 2015-3AG BY NATIONSTAR MORTGAGE LLC, IT'S ATTORNEY IN FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 Phone: 888-480-2432
Assignee: NATIONSTAR MORTGAGE LLC at Address: 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019 Phone: 1-888-480-2432
Original Beneficiary: AMERICAN GENERAL FINANCIAL SERVICES, INC.   Address: 1123 JACKSON AVE, PASCAGOULA, MS 39567   Phone: 662-985-1291

*Executed By:* HUGH RONNIE WALLACE NANCY K. WALLACE at 1969 MILL CREEK LANE BOGUE CHITTO, MS 39629 Phone: N/A
 To: AMERICAN GENERAL FINANCIAL SERVICES, INC.   Address: 1123 JACKSON AVE, PASCAGOULA, MS 39567   Phone: 662-985-1291
Date of Deed of Trust: 02/09/2010 Recorded: 02/25/2010 in Book/Reel/Liber: 1346 Page/Folio: 0965 as Instrument No.: 20100911 In the County of Lincoln, State of Mississippi.

Property Address: 1969 MILL CREEK LANE, BOGUE CHITTO, MS 39629

Indexing Instructions: PART OF THE SW 1/4 OF NW 1/4 AND NW 1/4 OF SW 1/4 OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI.
    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $66,196.84 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

    U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR CIM TRUST 2015-3AG MORTGAGE-BACKED NOTES, SERIES 2015-3AG BY NATIONSTAR MORTGAGE LLC, IT'S ATTORNEY IN FACT
On May 3rd, 2017

By:_____
MOHAMED HAMEED, Assistant Secretary

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

BK 1 5 4 1 PG 0 ▪▪▪

On May 3rd, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of
Texas, personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453613



COLLEEN BARNETT
Notary Public State of Texas
Comm Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)



BK 1576 PG 0549

20184733

| Prepared by: | Return to: |
|---|---|
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>8950 Cypress Waters Blvd<br>Coppell, Texas 75019<br>1-888-480-2432 - N/A | Shapiro & Massey, LLC<br>1080 River Oaks Drive, Suite B-202<br>Flowood, MS 39232<br>(601) 981-9299 |
| S&M No. ▮▮▮▮ | Loan No. ▮▮▮▮ |
| Grantor | Grantee |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>8950 Cypress Waters Blvd<br>Coppell, Texas 75019<br>1-888-480-2432 - N/A | Madison Revolving Trust 2017<br>Nationstar Mortgage LLC d/b/a Mr. Cooper<br>8950 Cypress Waters Blvd<br>Coppell, Texas 75019<br>1-888-480-2432 - N/A |

INDEX:  Part of the SW 1/4 of the NW 1/4 and the NW 1/4 of the SW 1/4 of Section 32, Township 6 North, Range 7 East, Lincoln Co., MS

**ASSIGNMENT COVER SHEET**

1969 Mill Creek Lane, Bogue Chitto, MS 39629

BK 1576 PG 0550

Recording Requested By: NATIONSTAR MORTGAGE DBA MR. COOPER

Prepared By:  Bernardo Hernandez,  NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019 1-888-480-2432
~~When Recorded Return To~~: DOCUMENT ADMINISTRATION, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019  1-888-480-2432

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Lincoln, Mississippi**
**SELLER'S SERVICING #** ███████ "WALLACE"

Date of Assignment: September 25th, 2018
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019
Phone: 888-480-2432
Assignee: MADISON REVOLVING TRUST 2017 at  Address:  P.O. BOX 296, MADISON, WI  53701
Phone:  N/A
Original Beneficiary: AMERICAN GENERAL FINANCIAL SERVICES, INC.  Address: 12292 ASHLEY DRIVE GUKFPORT, MS  39503  Phone:  N/A

Executed By: HUGH RONNIE WALLACE NANCY K. WALLACE at 1969 MILL CREEK LANE BOGUE CHITTO, MS  39629 Phone:  N/A
 To: AMERICAN GENERAL FINANCIAL SERVICES, INC.  Address:  12292 ASHLEY DRIVE GUKFPORT, MS  39503 Phone:  N/A
Date of Deed of Trust:  02/09/2010 Recorded:  02/25/2010  in Book/Reel/Liber: 1346 Page/Folio: 0965 as Instrument No.: 20100911 In the County of Lincoln, State of Mississippi.

Property Address: 1969 MILL CREEK LANE, BOGUE CHITTO, MS  39629

Indexing Instructions: PART OF THE SW 1/4 OF NW 1/4 AND NW 1/4 OF SW 1/4 OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI.
   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $66,196.84 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

  NATIONSTAR MORTGAGE LLC
On September 25th, 2018

By: _____
TSEDALE ALEMU, Vice-President

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas



On September 25th, 2018, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas, personally appeared TSEDALE ALEMU, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

DANIELA HORVATH
Notary Expires: 01/27/2020 #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)





BK1346 0965

20100911

(Space Above This Line For Recording Data)

**INDEX:** PART OF THE SW1/4 OF NW1/4 AND NW1/4 OF SW1/4 OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI.

**PREPARED BY:** ROBBIE WINDMILLER

**BRANCH ADDRESS:** 708 BROOKWAY BLVD
BROOKHAVEN, MS 39601-2640

**DOCUMENT:** DEED OF TRUST

**GRANTOR:** HUGH RONNIE WALLACE
NANCY K. WALLACE

**ADDRESS:** 1969 MILL CREEK LANE
BOGUE CHITTO, MS 39629

**PHONE #:** ▮▮▮▮▮▮

**TRUSTEE:** DAVID J. PETERS

**BENEFICIARY:** AMERICAN GENERAL FINANCIAL SERVICES, INC.

**ADDRESS:** 708 BROOKWAY BLVD
BROOKHAVEN, MS 39601-2640

**BRANCH PHONE #:** ▮▮▮▮▮▮

**LEGAL DESCRIPTION:**

Return To:
HomeLand Title
P.O. Box 321408
Flowood, MS 39232
601-948-3595

**AMERICAN
GENERAL
FINANCIAL SERVICES**

STATE OF MISSISSIPPI
COUNTY OF _Lincoln_

### DEED OF TRUST

THIS INDENTURE, this day made and entered into between Grantor, Trustee and Beneficiary, WITNESSETH:

That whereas the Grantor is justly indebted to the Beneficiary in the full amount of SIXTY-SIX THOUSAND ONE HUNDRED NINETY-SIX DOLLARS AND EIGHTY-FOUR CENTS_____ DOLLARS ($___66196.84_), as evidenced by a Note/Loan Agreement of the same date herewith in favor of the Beneficiary, having a maturity date of _February 16, 2025_, including interest at the rate provided therein, and providing for the payment of attorney's fees in case of default;

Together, however, with the right, at the option of the Beneficiary, of renewal or extensions, and future and additional advances as hereinafter provided; and

WHEREAS, the said Grantor desires to secure the prompt payment at maturity of the aforesaid indebtedness, as well as any renewal or extension of the same, or any part thereof, and any other or further indebtedness in the way of future advances, hereunder, or otherwise, that the Grantor, or either of them, may now or hereafter owe the Beneficiary as hereinafter provided.

▮▮▮▮▮ C. E. Real Estate Deed of Trust

Page 1 of 5

_HRW. NKW_

NOW, THEREFORE, in consideration of the Property, and the further consideration of Ten Dollars ($10.00), cash in hand paid by the aforesaid Trustee, the receipt of all which is hereby acknowledged, the Grantor does hereby convey and warrant unto the said Trustee the property situated in the State of Mississippi, and more particularly described as follows, to wit:   BK 1 3 4 6 1 6 0 9 6 6

Together with any building, structures, machinery, fixtures, equipment and improvements thereon, or that may hereafter be erected thereon whether the same be permanent or temporary, and whether now or hereafter attached to or used in connection with said premises, and the hereditaments and appurtenances and all other rights thereunto belonging or in anywise now or hereafter appertaining (it being the intention of the Grantor to describe all of the property belonging to the Grantor of the kinds and classes described herein located in the county stated herein, and also any property of said classes which may be hereafter acquired by the Grantor and placed on real estate hereinabove described "Property").

If this Deed of Trust is subject and subordinate to another deed of trust, it is hereby expressly agreed that should any default be made in the payment of any installment of principal or of interest on said prior deed of trust, the holder of this Deed of Trust may pay such installment of principal or such interest and the amount so paid with legal interest thereon from the time of such payment may be added to the indebtedness secured by this Deed of Trust and the accompanying Note/Loan Agreement shall be deemed to be secured by this Deed of Trust, and it is further expressly agreed that in the event of such default or should any suit be commenced to foreclose said prior deed of trust then the amount secured by this Deed of Trust and the accompanying Note/Loan Agreement shall become due and payable at any time thereafter at the sole option of the owner or holder of this Deed of Trust.

It is agreed and understood by and between parties hereto that this conveyance is executed and intended to be and is hereby made subject to the following covenants, stipulations and conditions, all of which shall be binding upon the parties hereto and each of them.

**First.** In addition to the indebtedness specifically mentioned above, and any and all extensions or renewals of the same, or any part thereof, this conveyance shall also cover such future and additional advances as may be made to the Grantor, or either of them, by the Beneficiary, the Beneficiary to be the sole judge as to whether or not such extensions or renewals, future and additional advances shall be made. In addition to all of the above, it is intended that this conveyance shall secure, and it does secure any and all debts, obligations, or liabilities, direct or contingent, of the Grantor herein, or either of them, to the Beneficiary, whether now existing or hereafter arising at any time before actual cancellation of this instrument on the public records of mortgages and deeds of trust, whether the same be evidenced by Note/Loan Agreement, open account, over-draft, endorsement, guaranty or otherwise.

**Second.** The Grantor will at all times during the continuance of this Deed of Trust keep the buildings and improvements on said Property insured against loss or damage by fire, storm, wind damage or other hazard in such reliable insurance company, or companies, as may be acceptable to the Beneficiary, for the maximum amount of insurance obtainable, or in such amount as may be approved by Beneficiary, and all policies covering the same shall contain the proper loss payable clause, making all losses, if any, payable to the Beneficiary, his successors or assigns, and shall be delivered to the Beneficiary herein, or to the owner or holder of the Note/Loan Agreements secured hereby as additional security. In case of loss and payment by any insurance company, the amount of insurance money so paid shall be applied either to the indebtedness secured hereby or in rebuilding or restoring the damaged building, or buildings, or it may be released to the Grantor, as the Beneficiary may elect. In the event of loss the Grantor shall immediately give notice by mail to the Beneficiary who may make proof of loss if same be not promptly made by the Grantor; provided, however, such right shall impose no duty whatsoever upon the Beneficiary and failure of Beneficiary to act shall not serve as a waiver of any rights Beneficiary may hold against the Grantor. Each insurance company involved is hereby authorized, empowered and directed to make payment for any loss directly to the Beneficiary instead of to the Grantor and the Beneficiary jointly.

**Third.** Grantor and Beneficiary expressly covenant and agree, that until all indebtedness owing on said Note/Loan Agreement or any renewal thereof is paid, Grantor will keep all Required Insurance premiums, taxes, governmental assessments, levies, and charges against said premises that could encumber said Property paid as they become due. Grantor's failure to keep such insurance coverage, taxes and charges current, as described in the preceding sentence, may result, at Beneficiary's option, without waiving any of its other rights or remedies and after giving any notice required by law, in Beneficiary paying said insurance, taxes or charges, and the amount so paid, with interest thereon at the rate described in said Note/Loan Agreement will be and become a part of the indebtedness secured by this Deed of Trust.

Beneficiary may elect, the law may require, or Grantor may request that Beneficiary maintain an escrow fund for payment of real estate taxes, assessments, insurance premiums, or other obligations that might encumber the Property if not timely paid when due. If so elected, if required by law, or if Grantor's request is granted, Grantor will pay to Beneficiary on the day monthly payments are due under the Note/Loan Agreement, until the Note/Loan Agreement is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Deed of Trust as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Beneficiary, including, but not limited to Hazard Insurance and Flood Insurance. These items are called "Escrow Items."

At origination or at any time during the term of the Note/Loan Agreement, Beneficiary may require that Community Association Dues, Fees, and Assessments, if any, be paid into escrow by Grantor, and such Dues, Fees and Assessments will be an Escrow Item. Grantor will promptly furnish to Beneficiary all notices of amounts to be paid under this section.

HR.W.      NKW

Grantor will pay Beneficiary the Funds for Escrow Items unless Beneficiary waives Grantor's obligation to pay the Funds for any or all Escrow Items.  Beneficiary may waive Grantor's obligation to pay Beneficiary Funds for any or all Escrow Items at any time more than one year after origination.  Any such waiver may only be in writing. In the event of such waiver, Grantor will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Beneficiary, or for which no escrow Funds have been collected, and, if Beneficiary requires, will furnish to Beneficiary receipts evidencing such payment within such time period as Beneficiary may require.  If Grantor is obligated to pay Escrow Items directly and fails to do so, Beneficiary may pay such amount and Grantor will then be obligated to repay to Beneficiary any such amount under the terms provided above.  Beneficiary may revoke its waiver of obligation to pay any or all Escrow Items at any time by a notice given in accordance with the notice provision of this Deed of Trust, and, upon such revocation, Grantor will pay to Beneficiary all Funds, and in such amounts, that are then required under this or other applicable sections.

Beneficiary may, at any time, collect and hold Funds in an amount (a) sufficient to permit Beneficiary to apply the Funds at the time specified under the Federal Real Estate Settlement Procedures Act and implementing regulations (collectively, "RESPA"), and (b) not to exceed the maximum amount a Beneficiary can require under RESPA. If holding such Funds, Beneficiary will estimate the amount of Funds due from Grantor on the basis of current data and reasonable estimates of expenditures for future Escrow Items or otherwise in accordance with applicable law.

The Funds will be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank.  Beneficiary will apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Beneficiary will not charge Grantor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Beneficiary pays Grantor interest on the Funds and applicable law permits Beneficiary to make such a charge.  Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Beneficiary will not be required to pay Grantor any interest or earnings on the Funds.  Beneficiary will give to Grantor, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Beneficiary will account to Grantor for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Beneficiary will notify Grantor as required by RESPA, and Grantor will pay to Beneficiary the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Beneficiary will notify Grantor as required by RESPA, and Grantor will pay to Beneficiary the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Deed of Trust, Beneficiary will promptly refund to Grantor any Funds held by Beneficiary.

**Fourth.**  The rents, issues, and profits of all and every part of the property here conveyed are specifically pledged to the payment of the indebtedness hereby secured, and all obligations which may accrue under the terms of this instrument.  Upon the maturity of the indebtedness hereby secured, either by lapse of time or by reason of any default as herein provided, or if at any time it becomes necessary to protect the lien of this conveyance, the Beneficiary, or any owner, or holder of the Note/Loan Agreements secured hereby, shall have the right to forthwith enter into and upon the property hereinbefore described and take possession thereof, and collect and apply the rents, issues and profits thereon upon the indebtedness secured hereby, or may, if it is so desired, have a receivership appointed by any court of competent jurisdiction to collect and impound the said rents, issues and profits and after paying the expense of such receivership apply the balance thereof to the payment of any indebtedness secured hereby.

**Fifth.**  In case the Grantor, their heirs or assigns, or either of them, or their vendees of the Property herein conveyed, immediate or remote should become insolvent, or apply to a bankruptcy court to be adjudicated a voluntary bankruptcy, or proceedings be instituted to put them in involuntary bankruptcy, or should any proceedings be taken against the Grantors, or their said vendees, immediate or remote, or either of them, looking to the appointment of a receiver, assignee, or Trustee, then, and in either or any such case, all rents becoming due thereafter on the property herein conveyed shall be due and payable to the Beneficiary herein, to be applied on the indebtedness secured hereby, and the whole indebtedness hereby secured may, at the option of the said Beneficiary or Beneficiary's assigns, be declared due and payable.

**Sixth.**  The Grantor further represents unto the said Beneficiary for the purpose of obtaining the loan or of obtaining deferred payment on the debt, as the case may be, secured by this instrument that there are no liens, leases, or encumbrances of any sort against the Property conveyed herein, except, if any, as shown by the records of said county.

**Seventh.**  The Grantor further agrees not to sell the Property hereinbefore conveyed or to further encumber such Property without the written consent of the Beneficiary, and further agrees not to abandon said Property, and a breach of any of these agreements and conditions shall cause the entire indebtedness secured hereby to become due and payable at the option of the said Beneficiary or Beneficiary's assigns.

**Eighth.**  It is further agreed that Grantor will commit no waste on the Property conveyed herein, and that, in event the undersigned Grantor fails to keep in as good state of repair as they now are the buildings and appurtenances hereinabove conveyed, the Beneficiary herein shall have the right at Beneficiary's option to make any needed repairs, betterments, or improvements, and that any expenditure for such purpose will be a legitimate indebtedness against the undersigned and against the Property embraced in this Deed of Trust, and the cost of any such repairs, betterments or improvements will become a part of the debt secured by this instrument.

**Ninth.**  It is distinctly understood and agreed that a failure by the Grantor to pay any one of the above Note/Loan Agreements or installments of principal, or the interest as it shall become due, or to do or perform any of the above agreements, shall cause the entire indebtedness to fall due and payable at the option of said Beneficiary, or Beneficiary's assigns, and shall fully empower the said Beneficiary or Beneficiary's assigns to have the Trustee, or any successor in said trust herein, to execute this trust, and said Beneficiary or Beneficiary's assigns shall not be required to declare such acceleration in writing, or give notice of it.

**Tenth.** Should the Grantor fail to pay, as hereinabove stipulated, all taxes, assessments, liens, or judgments, or to insure the Property and pay the premiums therefore, then the said Beneficiary, or Beneficiary's successors and assigns, may at their option pay any such unpaid taxes, assessments, liens or judgments, and insure said improvements, pay the premiums therefore, and, without notice, at their option declare the whole debt secured by this Deed of Trust to be due and payable and proceed to foreclose same at once.  All taxes, assessments, liens, judgments, and insurance premiums paid by the said Beneficiary, and all necessary expenses incurred by said Beneficiary, and all necessary expenses incurred by said Beneficiary in connection therewith, including any expense incurred in defending the title of the Grantor to this Property, where necessary for the protection of the said Beneficiary interest, or in defending this Deed of Trust as valid first lien on the Property described or intended to be described, herein, where necessary, or in seeking to have the Deed of Trust reformed by judicial proceedings, where necessary because mistake in this act, shall constitute a part of the debt secured by this Deed of Trust and become immediately due and payable to the said Beneficiary.  The Grantor agrees to pay all necessary and usual charges incident to the consummation of this loan, and likewise the usual and necessary costs incident to the cancellation upon the record or records of this Deed of Trust after the loan has been repaid in full.

**Eleventh.**  If the Property conveyed herein should be situated in two or more counties or in two judicial districts of the same county, then the Trustee or any successor in said trust shall have full power in case he is directed to foreclose under this instrument, to select in which county, or judicial district the sale of all of the above Property shall be made, and his selection shall be binding upon the Grantor and the Beneficiary and all persons claiming through or under them, whether by contract or by law.  The Trustee or any successor in said trust shall have full power to fix the day, time, terms, and place of sale, and shall also have full power to conduct any sale, hereunder through any agent duly appointed by him for that purpose, but said appointment of agent need not be recorded.

**Twelfth.** The Grantor waives the provisions of Section 89-1-55 of the Code of Mississippi of 1972, and laws amendatory thereof, if any, insofar as said section restricts the right of the Trustee to offer at sale more than one hundred and sixty acres at a time, and the Trustee may offer the Property herein conveyed as a whole, regardless of the manner in which it may be described.

**Thirteenth.** In case of the sale of the said Property hereunder, the Beneficiary or Beneficiary's assigns shall have the same right to purchase at such sale as if a stranger to this instrument.

**Fourteenth.**  The attorney's fees provided for in the above described Note/Loan Agreements and the Trustee's fee provided for in this Deed of Trust are hereby made liens on the above described Property, and the Grantor hereby promises to pay the same should they become due under the terms of the said Note/Loan Agreements and this Deed of Trust.

However, this conveyance is in trust.  Should the Grantor pay said indebtedness and interest owing thereon at maturity, and any renewal thereof, and also all further and future advances to them by the Beneficiary, as well as any other indebtedness due or which may become due the Beneficiary, or Beneficiary's assigns by the Grantor and comply with all the terms, agreements and conditions of this instrument, then this conveyance shall be void, otherwise, at the request of said Beneficiary, or any legal holder of said indebtedness, or any part thereof, the Trustee herein names, or any succeeding Trustee, shall sell said Property, or a sufficiency thereof to satisfy the indebtedness of every kind, hereby secured then unpaid, after having published notice of the time, place and terms of sale in the manner required by law, but the Trustee may sell at such time and such place as may be designated in the notice of such sale, being vested with discretion as to the time and place of sale, and not being required to make sale, or sales, at the time and place prescribed by the statute for sales under execution.

The Trustee's authority to sell shall not be exhausted upon making one sale, but he may make as many sales under this Deed of Trust as may be deemed advisable by the Trustee herein named, or any succeeding Trustee.  In the event the Trustee shall commence a foreclosure under the provisions of this Deed of Trust, the Grantor agrees to pay the costs and expenses of executing the trust, including a Trustee's fee of 10% of the proceeds of the sale in event of a sale by the Trustee, or if there is no sale, 10% of the principal and interest due, which is hereby agreed to be a reasonable Trustee's fee.  Out of the proceeds of any sale it is agreed that the reasonable Trustee's fee fixed in this Deed of Trust and the reasonable attorney's fee provided in said Note/Loan Agreement shall first be paid, next the amount of said indebtedness and interest thereon secured thereby then remaining unpaid, including any future advance or advances, any amount expended on said Property by the Beneficiary or the Beneficiary's assigns under the terms of this Deed of Trust and interest thereon, and all costs.  Any balance of said proceeds remaining shall be paid to the Grantor.

The Beneficiary, or any subsequent holder of said indebtedness, or any part thereof is hereby authorized to appoint another Trustee in the place and stead of and as successor to the Trustee herein named, or his successor or successors; such power of appointment may be exercised as often as the Beneficiary or holder of said indebtedness may desire, and shall continue as long as any part of the indebtedness hereby secured remains unpaid.  Such appointee shall have the same authority, title and powers as the Trustee herein named, and his acts shall have all the validity of the acts of the original Trustee.

Grantor agrees not to violate, nor allow the violation of any federal or state (or subdivision thereof) environmental, health or safety law, regulation or ordinance, affecting said Property.  Any such violation shall be deemed a default and Grantor agrees to indemnify, defend and hold Trustee harmless against any and all damages directly or indirectly caused by such violation, including, but not limited to, cleanup costs, attorney fees and costs, and that said claims, damages and costs shall be deemed additional sums due under the Deed of Trust indebtedness set forth in the Note/Loan Agreement executed in conjunction herewith.

It is further agreed that when any payment shall be made on the indebtedness hereby secured, the Beneficiary, or the legal holder of said Note/Loan Agreement, or Note/Loan Agreements, shall have the exclusive right to make application of the said payments to any part of the indebtedness hereby secured, whether the indebtedness to which said payment may be applied is specifically mentioned in this Deed of Trust or not, and in the event any payment is made by the Grantor, the Beneficiary, or the holder of the said indebtedness may, if the Beneficiary of said holder so desires, apply said payment on an unsecured debt, instead of applying the same on the indebtedness hereby secured.

If not prohibited by law or regulation, this Deed of Trust and all sums hereby secured shall become due and payable at the option of Beneficiary and without notice to Grantor forthwith upon the conveyance of Grantor's title to all or any portion of said mortgaged Property, or upon the vesting of such title in any manner in persons or entities other than, or with, Grantor unless the purchaser or transferee assumes the indebtedness secured hereby with the consent of the Beneficiary.

Grantor: _Hugh R. Wallace_ 346,60969

Grantor: _Nancy K Wallace_

STATE OF MISSISSIPPI, COUNTY OF _Lincoln_ ss:

Personally appeared before me, _Rhonda E Smith_, the undersigned authority in and for said county and state this _9th_ day of _Feb._, in the year of _2010_, within my jurisdiction, the within named _Hugh Ronnie Wallace_ _Nancy K. Wallace_ _____, who acknowledged that _They_ executed the above and foregoing instrument.

Given under my hand and seal of office. _Rhonda E Smith_

My Commission expires: _Feb 19, 2010_

Notary Public in and for said State
_Rhonda E Smith_
Name (typed or printed)

**LAND DEED OF TRUST**

from _____

to _____

_____ Trustee

Filed For Record _____ o'clock ____ M.,
_____ Clerk

**STATE OF MISSISSIPPI** _____ County

I certify that this Deed of Trust was filed for record in my office at ____ o'clock ____ M., on the ____ day of _____ and was duly recorded the ____ day of _____ on page ____ Book No. ____ of _____ in my office.

Witness my hand and seal of office, this ____ day of _____

_____ Clerk
_____ D.C.

Chancery Court

*DK / 346 / 50970*

Home-Land Title & Abstract File ▮▮▮▮▮
**INDEX:** PART OF THE SW ¼ OF NW ¼ AND NW ¼ OF SW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI.

## EXHIBIT "A"

TRACT I:

COMMENCE AT THE NW CORNER OF THE SW ¼ OF THE NW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI, AND RUN S00°13'40"W 778.60' TO THE POINT OF BEGINNING. FROM THE POINT OF BEGINNING, RUN THENCE S00°13'40"W 541.40'; THENCE RUN N89°59'35"E – 193.60'; THENCE RUN N00°00'25"W 542.01; THENCE RUN S89°54'00"W – 190.49; TO THE POINT OF BEGINNING. SAID PROPERTY SITUATED IN PART OF THE SW ¼ OF THE NW ¼ & THE NW ¼ OF THE SW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI, AND CONTAINS 2.39 ACRES.

TRACT II:

COMMENCE AT THE NW CORNER OF THE SW ¼ OF THE NW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI, AND RUN S00°13'40"W – 1314.00' TO THE POINT OF BEGINNING. FROM THE POINT OF BEGINNING, RUN THENCE S00°13'40"W – 30.00'; THENCE RUN S89°47'51"E – 193.60'; THENCE RUN N00°00'25"W – 30.00'; THENCE RUN N89°47'51"W – 193.43' TO THE POINT OF BEGINNING. SAID PROPERTY SITUATED IN PART OF THE SW ¼ OF THE NW ¼ & THE NW ¼ OF THE SW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI AND CONTAINS 0.133 ACRES.

SUBJECT TO A PERMANENT AND PERPETUAL EASEMENT RESERVED BY PEGGY SUE MOAK, TO-WIT:

COMMENCE AT THE NW CORNER OF THE SW ¼ OF THE NW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI, AND RUN S00°13'40"W – 1297.60' TO THE POINT OF BEGINNING. FROM THE POINT OF BEGINNING, RUN THENCE S00°13'40"W – 30.00'; THENCE RUN S89°47'51"E – 193.60'; THENCE RUN N00°00'25"W – 30.00'; THENCE RUN N89°47'51"W – 193.43' TO THE POINT OF BEGINNING. SAID PROPERTY SITUATED IN PART OF THE SW ¼ OF THE NW ¼ OF SECTION 32, TOWNSHIP 6 NORTH, RANGE 7 EAST, LINCOLN COUNTY, MISSISSIPPI AND CONTAINS 0.133 ACRES.

_____     _____
HUGH RONNIE WALLACE                  DATE


_____     _____
NANCY K. WALLACE                     DATE